# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00710-CV

**K. L. M., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT NO. C-12-0051-CPS, HONORABLE JAY K. WEATHERBY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In April 2012, the Department of Family and Protective Services took conservatorship of K.L.M.'s children, J.L.C. and A.A.C., Jr., after learning that the children's half-sibling, A.H., had died while in the care of the children's father, A.A.C., with whom K.L.M. and the children resided.[1] After a four-day trial in September 2013, the jury found that K.L.M. had endangered J.L.C. and A.A.C., Jr., and failed to comply with the provisions of a court order setting out actions necessary for her to regain custody; the jury also found that termination was in the children's best interest. *See* Tex. Fam. Code §§ 161.001(1)(E), (O), .001(2).  On appeal, K.L.M. challenges only the legal

---

[1] The children's father was indicted for murder of A.H., pleaded guilty to the lesser charge of injury to a child, and was sentenced to 30 years' imprisonment. He signed an affidavit of relinquishment of his parental rights to J.L.C. and A.A.C., Jr., and the issue of his parental rights was severed from this case.

sufficiency of the evidence supporting the finding that termination is in J.L.C.'s and A.A.C., Jr.'s best interest. We affirm the trial court's decree of termination.

## DISCUSSION

In a termination case, we consider whether the Department proved, by clear and convincing evidence, that the parent engaged in conduct that is grounds for termination and that termination is in the children's best interest. *See id.* § 161.001; *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). In the present case, the only appellate challenge is to the legal sufficiency of the evidence supporting the best-interest finding. In a legal-sufficiency challenge, we view the evidence in the light most favorable to the jury's verdict, assuming that the jury resolved disputed facts in favor of its finding when reasonable to do so, and considering undisputed evidence that does not support the jury's findings. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We defer to the jury's credibility determinations and reasonable resolution of factual disputes. *See In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). When deciding the best-interest issue, we consider the *Holley v. Adams* factors, keeping in mind that the list is not exhaustive and that not all of the factors must be proven. *C.H.*, 89 S.W.3d at 27; *see Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

At trial, the jury heard evidence of the following:[2]

`• J.L.C. wants to live with her foster mother, whom she refers to as "Mom." J.L.C. stated that her foster family loves her, takes care of her, and treats her well. J.L.C.

---

[2] The facts are known to the parties, and we therefore will not recite them in detail in this opinion. *See* Tex. R. App. P. 47.1 (appellate court opinions should be as "brief as practicable"), 47.4 (memorandum opinions should be "no longer than necessary to advise the parties of the court's decision and the basic reasons for it").

stated that she would not want to see K.L.M. or K.L.M.'s mother even if she were to remain living with her foster family.

- K.L.M. allowed the children to live with A.A.C., who used drugs in their presence, took them with him when he was transacting drug deals, and was continually violent toward K.L.M. for a period of at least five years. There was evidence presented that A.A.C. repeatedly committed serious acts of violence against K.L.M. in the children's presence, and K.L.M. acknowledged that J.L.C. was traumatized by what she had witnessed. K.L.M. admitted that A.A.C. supported them by selling drugs, and that she knew about it and assisted him in drug deals.

- J.L.C. and A.A.C., Jr. had been left in A.A.C.'s care during the time immediately preceding the death of their half-sibling.

- K.L.M. testified that it was dangerous for the children to remain in a "drug house" and for them to be driven in A.A.C.'s car while he was under the influence of drugs. She also testified that she and A.A.C. engaged in conduct that resulted in their arrests, which also put the children in danger.

- Although K.L.M. completed many of the counseling and parenting sessions, she continued to associate with at least one person who used drugs and was involved in a relationship involving domestic violence. Although K.L.M. denied being in a romantic relationship currently, when using social media she referred to a man as her "babe."

- Although she did not articulate how, K.L.M. professed that she would be a protective parent. Her testimony regarding her plans for J.L.C. and A.A.C., Jr., should they be returned to her, was vague. Moreover, K.L.M. testified that the apartment she currently lives in does not permit children to live with her. K.L.M. began full-time employment just one month before trial, and although she graduated from cosmetology school in April 2013, she had yet to take the exam necessary to obtain a license.

- J.L.C. and A.A.C, Jr.'s foster family would like to adopt the children if K.L.M.'s parental rights are terminated.

- K.L.M. testified that if the children are returned to her she plans to get a bigger apartment but has not done anything to initiate the application process.

On appeal, K.L.M. acknowledges the severity in both the nature and duration of the dangerous environment she exposed her children to while living with an abusive, violent drug dealer who ultimately was imprisoned after pleading guilty to child endangerment because one of J.L.C.'s and A.A.C., Jr.'s half-siblings died while in his care. She maintains, however, that she is no longer using or selling drugs, has a safe place to live (albeit one in which her children would not be permitted to live), and is no longer in an abusive relationship. K.L.M. testified that she suffers from depression that has gone as high as "eight" on a scale of one to ten. The Department caseworker testified that the Department is concerned that K.L.M. has not been honest or compliant in performing her required services and that K.L.M. has disclaimed responsibility for the circumstances resulting in the removal of her children.

We conclude that based on the evidence presented at trial, along with K.L.M.'s tendency to give inconsistent testimony, the jury could have reasonably formed a firm belief or conviction that the termination of K.L.M's parental rights was in the children's best interest. *See Holley*, 544 S.W.2d at 372; *L.Z. v. Texas Dep't of Family & Protective Servs.*, No. 03-12-00113-CV, 2012 WL 3629435, at *10-11 (Tex. App.—Austin Aug. 23, 2012, no pet.) (mem. op.) (father attempted to comply with service plan but did not complete all required tasks and had history of instability, domestic violence, and criminal activity, and Department planned to have child's foster family adopt him); *see also B.D.H. v. Texas Dep't of Family & Protective Servs.*, No. 03-13-00374-CV, 2013 WL 6002856, at *4 (Tex. App.—Austin Nov. 5, 2013, pet. filed) (mem. op.) ("[I]n considering the best interests of the child, 'evidence of a recent turn-around in behavior by the parent does not totally offset evidence of a pattern of instability and harmful behavior in the

past.'" (quoting *Smith v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 673, 681 (Tex. App.—Austin 2005, no pet.))).  We hold that the evidence is legally sufficient to support the jury's best-interest finding.

## CONCLUSION

We affirm the trial court's order of termination.


_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   March 13, 2014